Williams, Judge,
delivered the opinion:
The plaintiff brings this suit to recover $35,452.65, claimed to be due on its contract with the Government to construct two steel river vessels.
The case presents two questions: (1) Does the contract definitely fix the price to be paid for the construction of the vessels at $740,000? (2) If the contract does not definitely fix the price for the vessels at $740,000, was the mill or invoice weight of the steel, required for their hulls and superstructure, in excess of or less than the estimated amount of 737,000 pounds for each vessel ?
The defendant contends that $740,000 is definitely fixed in the contract as the amount plaintiff is to be paid for the construction of the vessels, and that this price is not in any way modifiied by the supplemental contracts.
The plaintiff, on the other hand, contends that the $740,000 named in the contract as the purchase price of the vessels, was based on an estimated steel requirement of 1,474,000 pounds for the two vessels, and was subject to adjustment at the rate of 15 cents per pound for steel, as the amount actually required iri their construction was in excess of or less than that amount.
We think the plaintiff is right in its contention. There can be no doubt that both the plaintiff and the defendant, at the time the contract was entered into, understood that the contract price of $740,000 was adjustable at the rate of 15 cents per pound for steel, as the amount actually required in the construction of the vessels was in excess of or less than the estimated steel requirement on which the plaintiff submitted its bid. This conclusion is inescapable when the nature and character of the negotiations between the parties prior to the making of the con *404 tract, as evidenced by the letters and telegrams exchanged by them are considered.
In its original proposal the plaintiff stipulated credit and debit adjustments on the amount of its bid of $740,000; first, fifteen cents per pound on steel to cover a surplus or deficit on the estimated steel requirement of 737,000 pounds per vessel; second, to cover increase or decrease in the price of steel at the mills; and, third, to cover changes in existing freight rates, and war tax on freight. The proposal contained the further provision that the Government waive the eight-hour law requirement. The defendant in its telegram of June 27 (Finding III) rejected the plaintiff’s proposal as to the waiver of the eight-hour law requirement, adjustments of the contract price because of variations in the prices of steel at the mills, and reimbursement to plaintiff on account of changes in existing freight rates and war taxes on freight, but stated as to the first condition of the proposal, “ the price of fifteen cents per pound for extra steel can be considered as a flat rate on extras and deductions.” The plaintiff was requested to answer by wire not later than June 28, 1920, whether it would accept a contract for the construction of one, two, or three vessels at the prices quoted on Diesel engine-driven or steam-driven vessels in accordance with specifications. The plaintiff upon the receipt of this telegram wrote the defendant amplifying its proposal of June 19, 1920. In the amplified proposal the' plaintiff withdrew the restrictions in its proposal on unit prices of steel subject to variations in mill costs, freight rates and war taxes, and the waiver of the eight-hour law requirement, and stated it would accept offer for two river vessels constructed of steel with steam propulsion in accordance with the specifications for $740,000. This acceptance, however, was coupled with the statement:
“It is understood that if the total weight of plates, shapes, rivets, steel castings, and forgings for each vessel exceeds 737,000 lbs., we are to be reimbursed for the excess weight at the rate of 150 per lb., the Government to receive the corresponding decrease in case the weight of the steel as stated above is less than 737,000 lbs. for each vessel. This *405 estimate does not include deck fittings, castings, pipe stanchions, pipe, railings, stack, etc. We will complete all of the vessels not later than December 1, 1921.”
This amplified proposal was accepted by the defendant on June 29, 1920, and the plaintiff was notified that it had been awarded the contract for the construction of the two vessels at the price named in its proposal of June 19, 1920, $740,000, and on the following day the formal contract was entered into.
Article 6 of the contract provided:
“ * * * the prices stipulated in this contract (article 1) for the materials furnished and services performed; the total amount [$740,000] set forth in article 1 hereof to be subject, however, to such increase or decrease as may be found necessary under the stipulations of this agreement for the omission or addition of work at unit prices, and less the amount of penalties, if any, under article 3 or of any other proper charges.”
The contract contained the further provision:
“ That the said parties do hereby mutually covenant and agree to and with each other — referring to any circular to bidders, drawings or plans, specifications, memoranda, cata-logues, cuts, etc., attached or pertaining hereto, and which, so far as they are applicable, form a part of this contract — * * * ”
The documents incorporated in the contract, by this covenant, must contain the stipulations specified in article 6 of the contract, as no unit prices are mentioned in the contract itself. The stipulation in the amplified proposal of June 28, which was accepted by the defendant, that the contract price of $740,000 was subject to adjustment at the rate of 15 cents per pound for steel required in the construction of the vessels in excess of or less than 737,000 pounds for each vessel was, by this provision, incorporated in and became a part of the contract. This was the construction the Comptroller General gave the contract in his decision disallowing the plaintiff’s claim. The comptroller said:
“ The sum of $35,452.65, representing the difference between the amount claimed and the amount allowed, is disallowed for the following reasons:
“ The contractor in its proposal of June 19, 1920, and amplification thereof dated June 28, 1920, referred to in and *406 specifically made a part of contract of June 30, 1920, stated that its proposal was based on an estimated steel requirement (including hull frames, plating, and superstructure, but exclusive of deck fittings) of 737,000 pounds for each vessel, or a total of 1,474,000 pounds, invoice or mill weight. It agreed that if the actual steel requirement for both vessels exceeded the total estimated quantity, such excess is to be paid for by the Government at the price of 15$ per pound, invoice or mill weight. It agreed further that if the total estimated steel requirement exceeded the actual requirement for both vessels the Government is to receive credit for the excess at the same rate per pound, invoice or mill weight.”
Accepting as correct the plaintiff’s contention that the purchase price named in the contract was 'subject to adjustment in the manner stated, the remaining question in the case is, What was the amount of steel actually required and used in the construction of the hulls and superstructures of the two vessels ? This is entirely a question of fact, and we have found in the findings of fact herein that 1,597,568 pounds of steel, including a reasonable allowance for scrap, went into the construction of the vessels, or an excess of 123,568 pounds over the estimated requirement. The plaintiff is entitled to receive $18,535.20 for this excess steel, making the contract price for the construction of the two vessels $758,535.20. Including proper credits due the defendant, the plaintiff has been paid $723,188.00, leaving a balance of $35,347.20 due and unpaid, which plaintiff is entitled to recover.
Judgment is, therefore, awarded the plaintiff in the sum of $35,347.20. It is so ordered.
Whaley, Judge; LittletoN, Judge; GREEN, Judge; and Booth, Chief Justice, concur.